IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

LISA FLOYD ETIENNE,
*As Guardian and Conservator of Cory Etienne, Ward*                    PLAINTIFF

v.                                                 CIVIL ACTION NO. 1:20-cv-229-TBM-RPM

WARTSILA NORTH AMERICA, INC;
ERIC RAMON JAMES;
VANGUARD RISK MANAGEMENT, LLC;
ENERSENSE INTERNATIONAL OYJ;
CRUM & FORSTER SPECIALTY INSURANCE COMPANY;
WARTSILA PROJECTS OY; WARTSILA FINALND OY;
*and* XL INSURANCE COMPANY SE                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER GRANTING MOTION
## TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Eric James collided with Cory Etienne when James was driving a truck rented by Wartsila

North America, Inc. Etienne was injured in the accident and filed suit against James and James'

alleged employers. Etienne is also suing XL Insurance Company SE, an Irish insurance company,

because Etienne believes XL Insurance SE insures Wartsila North America as an excess insurance

carrier. XL Insurance SE meanwhile asserts that it does not do business in Mississippi and does

not have the necessary minimum contacts for this Court to exercise personal jurisdiction over it.

This Court agrees and finds that XL Insurance SE's Renewed Motion [141] to Dismiss is granted.

### I. FACTUAL AND PROCEDURAL BACKGROUND

James collided with Etienne at an intersection on Highway 49 in Gulfport, Mississippi.

[163], pps. 3–5. James was driving a Chevrolet Silverado rented by Wartsila North America. *Id*. at

4. It is "sorely disputed" as to who employed James at the time of the wreck. [147], p. 2; [163], p.

6. Etienne filed suit in the Circuit Court of Harrison County, Mississippi. [1]. Wartsila North

America timely removed the suit to this Court. *Id.*

Etienne then moved to amend the Complaint to add XL Insurance SE and additional defendants. [50]; [58]; [162]; [163]. XL Insurance SE is "a *Societas Europaea*" that is domiciled and holds its principal place of business in Dublin, Ireland.[1] [119], p. 5. Etienne asserts XL Insurance SE "is a foreign Company doing business in the United States[.]" [163], p. 3. Etienne alleges that "Wartsila [ ] was insured under an excess policy of liability insurance issued by XL [Insurance SE.]" *Id.* at 14. Etienne seeks a judicial declaration that "James qualifies as an insured driver under the XL [Insurance SE] policy and that the policy provides excess liability coverage for James, Wartsila, Enersense, and/or Vanguard." *Id.* Etienne also added Wartsila North America's "parent/sister corporations" Wartsila Projects Oy and Wartsila Finland Oy. [162], p. 2. Both parties have answered claiming that this Court lacks personal jurisdiction. [187], p. 1.

Etienne asserts within the briefing that "there is another policy that directly ties into the Master Policy and the issues before the Court." [147], p. 3. Etienne identified this "local policy" which was issued by XL Insurance America, Inc. to Wartsila Holding, Inc., Wartsila North America's parent company. [146-7], p. 2. But XL Insurance America is not a party to this suit.

Wartsila North America is incorporated in Maryland with its principal place of business in Texas. [163], p. 2. Wartsila North America is licensed to do business in Mississippi. [138]; [146-3], p. 1. "Wartsila North America, Inc., is a subsidiary of Wartsila Holding, Inc. Wartsila Holding, Inc., Wartsila Projects Oy, and Wartsila Finland Oy are subsidiaries of Wartsila Corporation a/k/a

---

[1] A *Societas Europaea* is a type of public company created under the laws of the European Union. *See* Council Regulation No. 2157/2001, 2001 O.J. (L. 294), 3 ("A company may be set up within the territory of the Community in the form of a European public limited-liability company (*Societas Europaea* or SE)"). *See also*, Boris Bittker & Lawrence Lokken, Federal Taxation of Income, Estates and Gifts, 85.4, *2 (WG&L eds., July 2022) ("a *Societas Europaea* [is] an entity whose organizational laws are under regulations of the European Union and which the U.S. regulations classify as a per se corporation"). At the time the policy was underwritten, XL Insurance SE's headquarters and principal place of business was in London, United Kingdom. [118-1], p. 2.

Wartsila Group ('Wartsila Oyj Abp')." [162-3], p. 2. Wartsila Finland Oy and Wartsila Projects Oy are Finnish companies. [163], p. 2; [187], p. 2.

Etienne claims that there is inadequate insurance coverage, so the XL Insurance SE policy is essential to recovery. [147], p. 1. Etienne conflates the Wartsila and XL Insurance defendants.[2] The policy issued by XL Insurance America names "Wartsila Holding, Inc." as the "[first] Named Insured" within the schedule. [146-7], p. 20. But the policy issued by XL Insurance SE names Wartsila Oyj Abp as the "Policy Holder." [118-3], p. 2. The XL Insurance SE policy states that the geographical area of the policy is "worldwide" and covers "[a]ll activities, businesses and products of an insured(s)." [118-3], p. 2. Since Etienne asserts that Wartsila North America is insured by both policies, Etienne seeks to recover from the XL Insurance SE policy's €50,000,000 policy limit instead of XL Insurance America's $5,000,000 policy limit. [146], pps. 3-4.

XL Insurance SE filed the present Motion alleging lack of personal jurisdiction. [141]. XL Insurance SE provided the Court with an affidavit [118-1] signed by Florence Chevet, General Counsel for XL Insurance SE, which has been incorporated through its Renewed Motion to Dismiss [141]. [142], p. 1; [118-1]. Chevet declared that XL Insurance SE issued a policy of excess liability insurance to "Wartsila Oyj Abp, a Finnish corporation[ ]. The Policy was issued from [XL Insurance SE's] offices in Stockholm, Sweden." [118-1], p. 3. Chevet stated that XL Insurance SE has "no offices or subsidiaries in North America. . . . does not own, control, or lease any other real property" nor does it "have any corporate status in the United States." [118-1], p. 2.

XL Insurance SE "does not advertise in North America and does not otherwise solicit any

---

[2] Throughout the briefs, Etienne uses "Wartsila" and "XL" interchangeably for the numerous Wartsila defendants—Wartsila North America, Wartsila Projects Oy, Wartsila Finland Oy, Wartsila Group, Wartsila Holding—and XL Insurance parties—XL Insurance SE and XL Insurance America.

business in the United States, including Mississippi." *Id*. Chevet also said XL Insurance SE "does not have agents" or "contracts with independent insurance agents serving Mississippi or the United States[.]" *Id*. Chevet declared the "policy and practice" of XL Insurance SE "is not to issue or deliver policies of insurance through United States brokers and not to otherwise engage with any insurance agent or broker located or headquartered in the United States with respect to placement or negotiation of any of its insurance policies." *Id*. XL Insurance SE "does not receive premium payments in or through the United States." *Id*. The Board of Directors "are domiciled in the European Union or the United Kingdom. None of the Directors are citizens of Mississippi or the United States." *Id*. at 3. XL Insurance SE "is not licensed to underwrite policies of insurance by any State insurance regulator in the United States." *Id*. XL Insurance SE "does not have any bank accounts in Mississippi or in the United States . . . [nor] paid income, franchise, or any other tax or fee in the State of Mississippi." *Id*. So, XL Insurance SE asserts that this Court lacks both general and specific jurisdiction. [119], p. 14.

Etienne refutes XL Insurance SE's claims by making two arguments about why this Court can exercise personal jurisdiction over XL Insurance SE: (1) XL Insurance SE's act of insuring Wartsila North America, a company doing business in Mississippi, should be considered to be doing business in Mississippi; and (2) XL Insurance SE's subsidiaries do business in North America, so XL Insurance SE should be considered doing business in Mississippi. [128], p. 3; [147], p. 8.

## II. ANALYSIS

XL Insurance SE filed its Renewed Motion to Dismiss [141] for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Etienne alleges that XL Insurance SE is "doing

business" in Mississippi because its insured, Wartsila North America, does business in Mississippi. [147]. Meanwhile, XL Insurance SE contends that the Mississippi long-arm statute does not permit the exercise of personal jurisdiction because XL Insurance SE is not doing business in Mississippi. [142], p. 5. Further, XL Insurance SE argues that even if the Court found jurisdiction proper under the Mississippi long-arm statute, there would be no specific jurisdiction because XL Insurance SE did not purposely direct any of its activities at Mississippi and the Court lacks the minimum contacts to assert specific personal jurisdiction. [119], p. 6; [142], p. 13. Accordingly, this Court must determine whether Etienne presented sufficient evidence to support that jurisdiction is proper in Mississippi. *Diece-Lisa Indus. v. Disney Enters.*, 943 F.3d 239, 249 (5th Cir. 2019).

## A. Personal Jurisdiction Generally

"A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over the defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *Mink v. AAAA Dev., LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Unlike in other states, the Mississippi long-arm statute is not coextensive with federal due process. *Allred v. Moore & Peterson*, 117 F.3d 278, 282 (5th Cir. 1997) (citing *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616–17 (5th Cir. 1989)). The Court must address each inquiry. *See Striping v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000). But if the long-arm statute does not allow for the assertion of personal jurisdiction over the defendant, the Court need not consider the due process issue. *Cycles*, 889 F.2d at 616 (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1167 (5th Cir. 1985).

"Plaintiffs bear the burden of proving the district court's personal jurisdiction, but relevant factual disputes will be resolved in plaintiffs' favor." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005) (citing *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)). "The district court is not obligated to consult only the assertions in the plaintiff's complaint . . . Rather, the district court may consider the contents of the record at the time of the motion, including affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Techs., Inc. v. Sage Group, PLC*, 313 F.3d 338, 343 (5th Cir. 2002).

## B. The Mississippi Long-Arm Statute

This Court looks to the Mississippi long-arm statute which provides:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

MISS. CODE ANN. § 13-3-57. There are three prongs to the Mississippi long-arm statute: contract, tort, and "doing-business." *Fitch v. Wine Express Inc.*, 297 So. 3d 224, 228 (Miss. 2020); MISS. CODE ANN. § 13-3-57. The Mississippi Supreme Court has observed that the long-arm statute only applies when there is a "nonresident corporation . . . [that] is not a corporation qualified to do business in this state" that falls under the contract, tort, or "doing business" prong of the statute. *Estate of Jones v. Phillips ex rel. Phillips*, 992 So. 2d 1131, 1138 (Miss. 2008) (quoting *Sorrells v. R & R Custom Coach Works, Inc.*, 636 So. 2d 668, 671 (Miss. 1994). XL Insurance SE is not registered with the Mississippi Secretary of State. [146-4], pg. 4. Etienne concedes that the contract and tort prongs of the long-arm statute are not applicable in this case. [181], pg. 27. To establish personal

jurisdiction over XL Insurance SE, Etienne must prove that XL Insurance SE was "doing business" in Mississippi. Miss. Code Ann. § 13-3-57.

## C. *Erie* Doctrine

The Mississippi Supreme Court has not squarely addressed what is required for a foreign insurance company to be considered "doing business" for purposes of personal jurisdiction under the current long-arm statute. Therefore, this Court must make an *Erie* guess at what the Mississippi Supreme Court would do in this case. *See Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

This requires relying on (1) Mississippi Supreme Court decisions "in analogous cases" along with (2) the reasoning of Mississippi Supreme Court decisions on related issues, (3) Mississippi Supreme Court dicta, (4) decisions of other Mississippi state courts, (5) "the general rule on the question," (6) decisions of other courts that the Mississippi Supreme Court looks to when rendering its decisions, and (7) treatises or legal commentaries. *Gulf & Miss. River Transp. Co., Ltd. v. BP Oil Pipeline Co.*, 730 F.3d 484, 488 (5th Cir. 2013) (quoting *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel, L.L.C.*, 620 F.3d 558, 564 (5th Cir. 2010)).

### 1. Mississippi Supreme Court Decisions

This Court begins with Mississippi precedent. As stated above, the Mississippi Supreme Court has not squarely addressed the particular fact pattern presented in this case. But it has decided cases touching on what generally is required to do business in Mississippi. The test for doing business in Mississippi has developed over time.

In *Mladinich v. Kohn*, the Mississippi Supreme Court adopted a three-part test for "doing business" from the Supreme Court of Washington. *Mladinich v. Kohn*, 250 Miss. 138, 147, 164 So.

2d 785, 790 (Miss. 1964) (citing *Tyee Const. Co. v. Dulien Steel Products Inc. of Washington*, 62 Wash.

2d 106, 381 P.2d 245, 251 (1963)). *Mladinich* set out the following three factors:

> (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*Mladinich*, 250 Miss. at 147–48, 164 So. 2d at 790. "At one point, the long-arm statute required the

cause of action to be connected with the business or work or service in this state." *Phillips*, 992 So.

2d at 1139 (citing *Mladinich*, 250 Miss. at 147). Later, the "Legislature removed [this] 'nexus'

requirement in 1991." *Phillips*, 992 So. 2d at 1139 (citing *Gross v. Chevrolet Country, Inc.*, 655 So.

2d 873, 878 (Miss. 1995) (finding that the "current version of the long arm" statute repealed the

nexus test but applying the *Mladinich* test because suit was filed before the 1991 amendment to the

long-arm statute went into effect)).

Without the nexus requirement, in 2008, the Mississippi Supreme Court abandoned the

three-part test and determined that the "doing business" prong of the Mississippi long-arm statute

"by its plain terms, applies to any person or corporation performing any character of work [or

service] in this state." *Phillips*, 992 So. 2d at 1139; *see also ITL Intern., Inc. v. Constenla, S.A.*, 669

F.3d 493, 498 (5th Cir. 2012) (stating that the Mississippi Supreme Court no longer applies the

*Mladinich* three-part test).

The new test was more plainly stated in *Fitch v. Wine Express Inc.*, as "any corporation or

person 'who shall do any business or perform any character of work or service in this state . . .'"

and further specifying in another case, *Adara Networks Inc. v. Langston*, that a foreign corporation

is "doing business" in Mississippi when it is "engaged in 'various acts here for the purpose of realizing a pecuniary benefit or otherwise accomplishing an object.'" *Fitch v. Wine Express Inc.*, 297 So. 3d 224, 229 (Miss. 2020) (citing MISS. CODE ANN. § 13-3-57); *Adara Networks Inc. v. Langston*, 301 So. 3d 618, 625 (Miss. 2020) (quoting *McDaniel v. Ritter*, 556 So. 2d 303, 309 (Miss. 1989) (citing Restatement (Second) of Conflict of Laws § 35, Comment a (1971)). These two new cases are worthy of more detailed discussion.

In *Fitch*, the Mississippi Supreme Court was faced with determining whether online wine sellers, based out of New York and California—who had no physical presence in Mississippi— were "doing business" for purposes of the long-arm statute. *Fitch*, 297 So. 3d at 227. The Mississippi Supreme Court found that the sellers were virtually doing business in Mississippi because the sellers were marketing goods to Mississippians and allowed Mississippians to purchase wine and ship it to Mississippi through their websites. *Fitch*, 297 So. 3d at 229. The Mississippi Supreme Court stated that the nonresident defendants "conducted business in Mississippi by means of their respective websites, which gave them a virtual presence in Mississippi" when they sold alcoholic beverages to Mississippi customers. *Id.* Thus, each nonresident defendant in *Fitch* was subject to personal jurisdiction under Mississippi's long-arm statute. *Id.*

This leads to *Langston* where the Mississippi Supreme Court looked to the actions of Adara Networks, a nonresident defendant, to determine whether or not it was doing business in Mississippi. *Langston*, 301 So. 3d at 625. An affidavit stated that an agent was paid by the nonresident defendant to perform services in Mississippi for more than sixteen years. *Id.* Further this agent solicited investments and provided information to Mississippi residents. *Id.* Additionally, the nonresident defendant maintained bank accounts in Mississippi; conducted

shareholder meetings in Mississippi; and provided corporate documents for examination in the state of Mississippi. *Id.* The Mississippi Supreme Court held that "ample evidence" was provided "that [Adara] Networks [ ] has done business in Mississippi." *Id.*

As a result, under Mississippi Supreme Court precedent, any company that performs various acts in Mississippi "for the purpose of thereby realizing a pecuniary benefit," like selling to Mississippians online, soliciting investments from Mississippians, and holding meetings in Mississippi, is doing business in Mississippi. *Langston*, 301 So. 3d at 625.

### 2. Decisions of Other Mississippi State Courts

The Court now turns to other Mississippi state court cases. The Mississippi Court of Appeals has yet to fully apply *Langston* or *Fitch* in a helpful context, but its earlier opinions outline acts that nonresident corporations have undertaken, such that they were doing business in Mississippi.

In 2003, the Mississippi Court of Appeals addressed whether it was sufficient to assert personal jurisdiction under the "doing business" prong of the long-arm statute over a nonresident insurance company that is not qualified to do business in Mississippi. *Hogrobrooks v. Progressive Direct*, 858 So. 2d 913 (Miss. Ct. App. 2003). The court held there was no personal jurisdiction over the nonresident insurer because the nonresident insurance company did not sell insurance to Mississippi residents. *Hogrobrooks*, 858 So. 2d at 920. Since the nonresident insurance company had no license to do business in Mississippi and had not appointed an agent for service of process, the court found there "was no act or transaction in the state involving Progressive [Direct] . . . that is connected to the litigation." *Id.* at 922. Further, "[t]here was no purposeful act connected with

this dispute that the defendant performed in this state." *Id.* Thus, the court found personal jurisdiction did not exist. *Id.* at 922.

Likewise, in *Kekko v. K & B Louisiana Corp.*, the Mississippi Court of Appeals was tasked with determining whether a Louisiana drug store was doing business in Mississippi. *Kekko v. K & B Louisiana Corp.*, 716 So. 2d 682 (Miss. Ct. App. 1998). The drug store advertised on New Orleans television stations and in the New Orleans *Times Picayune*. *Kekko*, 716 So. 2d at 683. The court held there was no personal jurisdiction over the nonresident defendant because there was "no purposeful solicitation of Mississippi residents." *Id.* (citing *Gross*, 655 So. 2d at 878). Therefore, no personal jurisdiction existed between the nonresident defendant and Mississippi. *Id.*

The Mississippi Court of Appeals addressed in a more recent case whether advertising as part of a national, generalized advertising plan was sufficient to establish personal jurisdiction under the doing business prong of the long-arm statute. *Wilson v. Highpointe Hospitality, Inc.*, 62 So. 3d 999 (Miss. Ct. App. 2011). The court reviewed whether advertising conducted by a franchisor was sufficient to establish personal jurisdiction over the nonresident defendant. *Wilson*, 62 So. 3d at 1001. The court held generalized advertising was insufficient to subject the nonresident defendants to Mississippi courts. *Id.* at 1001–02. The nonresident defendants do not "do business in Mississippi; neither have any connection to Mississippi; and they have not received any benefits or protections from Mississippi." *Id.* at 1002. Additionally, the information solicited from the nonresident defendants was initiated by another party. *Id.* Consequently, personal jurisdiction was not proper in Mississippi. *Id.*

As the Mississippi Supreme Court has determined, any company that performs various acts in Mississippi "for the purpose of thereby realizing a pecuniary benefit," like selling to

Mississippians online, soliciting investments from Mississippians, and holding meetings in Mississippi, is doing business in Mississippi. *Langston*, 301 So. 3d at 625. Further, registering an agent for service of process or obtaining a license to do business in Mississippi are acts the courts look to in determining whether a foreign defendant is doing business in Mississippi. *See Hogrobrooks*, 858 So. 2d at 919. Also, purposeful solicitation of Mississippi residents could help establish that a foreign defendant is doing business in Mississippi. *See Wilson*, 62 So. 3d at 1001. Even though those Mississippi Court of Appeals opinions were handed down prior to the "pecuniary benefit" aspect of the test, they appear to be consistent with its application.

### 3. General Rule & Other Authorities

Turning to treatises, legal commentaries, and the "general rule," courts determine a nonresident defendant is "doing business" if it performs various "acts for the purpose of thereby realizing pecuniary benefit, or otherwise accomplishing an object or doing a single act for such purpose with the intention of thereby initiating a series of such acts." Restatement (Second) of Conflict of Laws § 35, Comment a (1971)). The Mississippi Supreme Court has already cited the Restatement (Second) of Conflict of Laws following this general rule. *See Langston*, 301 So. 3d at 625; *Phillips*, 992 So. 2d at 1139; *McDaniel*, 556 So. 2d at 309.

Given the Mississippi Supreme Court's general rule on interpreting the Mississippi long-arm statute, looking to the interpretations of other courts would not be helpful in addressing this particular set of facts.

### D. Etienne's Personal Jurisdiction Arguments

Etienne has the burden of establishing jurisdiction. *See Fielding*, 415 F.3d at 424; *see also See Luv N' care, Ltd. v. Insta-Mix, Inc.*, 483 F.3d 465, 469 (5th Cir. 2006). Accordingly, Etienne must

demonstrate that XL Insurance SE performed various acts in Mississippi for the purpose of realizing a pecuniary benefit. *See Langston*, 301 So. 3d at 625; *Fitch*, 297 So. 3d at 229. Etienne makes two arguments that this Court can exercise personal jurisdiction over XL Insurance SE: (1) XL Insurance SE's act of insuring Wartsila North America, a company doing business in Mississippi, should be considered to be doing business in Mississippi; and (2) XL Insurance SE's subsidiaries do business in North America, so XL Insurance SE should be considered doing business in Mississippi. [128], p. 3; [147], p. 8.

### 1. Whether the Act of Insuring is Doing Business in Mississippi

Etienne states that "Defendant, Wartsila, was insured under an excess policy of liability insurance issued by XL which was in full force on the day of this collision." [163], p. 14. Etienne's references to "Wartsila" attempt to present these parties as one defendant throughout the Fourth Amended Complaint. [163]. But they are all separate entities. *See* [162-3], p. 2.[3] Etienne must show that XL Insurance SE carried out various acts "for the purpose of thereby realizing a pecuniary benefit" in Mississippi. *See Langston*, 301 So. 3d at 625. Etienne does not argue that XL Insurance SE did anything in Mississippi, other than insure an entity licensed to do business in Mississippi. [147], p. 8.

The applicable policy was issued from XL Insurance SE—in Sweden—to Wartsila Oyj Abp—in Finland. [118-3], pg. 2. There is no specific mention of Mississippi or Wartsila North America in the XL Insurance SE policy. *Id.* It may be that Wartsila North America is considered an insured under the XL Insurance SE policy as a subsidiary of Wartsila Oyj Abp but the record shows that XL Insurance SE does not collect premiums from the United States nor solicit any

---

[3] Etienne refers to Wartsila when referencing the individual Wartsila defendants and nonparties: Wartsila North America, Wartsila Projects Oy, Wartsila Finland Oy, Wartsila Group, and Wartsila Holding.

business in the United States, "including Mississippi." [118-1], p. 2; [118-3], p. 6; [142], p. 11; [149], p. 5. Etienne provides no evidence that XL Insurance SE performed *any* "act for the purpose of realizing a pecuniary benefit or otherwise accomplishing an object" within Mississippi. *Langston*, 301 So. 3d at 625. Instead, the only connection is that XL Insurance SE's insured does business in Mississippi. [128], p. 10; [147], p. 14. To be sure, XL Insurance SE has merely provided insurance coverage with a worldwide policy area to a Finnish company that has a subsidiary operating in Mississippi. [147], pg. 2. This is insufficient.

XL Insurance SE directs the Court to *Hilbun v. California-Western State Life Ins. Co.*, to determine when a foreign insurer is considered doing business in Mississippi. [131], p. 9; [142], pps. 7–10; [149], pps. 8–9; *Hilbun v. California-Western State Life Ins. Co.*, 210 So. 2d 307, 310 (Miss. 1968). The Mississippi Supreme Court utilized the now abandoned *Mladinich* test to determine whether the foreign insurer was doing business for purposes of the long-arm statute. *Hilbun*, 210 So. 2d at 310 (citing *Mladinich*, 250 Miss. at 148). It looked—at that time—to the legislature's intentions stating: the long-arm statute is effective "when policies of insurance are issued or delivered to policyholders within this state[.]" *Id.* The Mississippi Supreme Court ultimately found that the foreign insurer was not "doing business" in Mississippi because it did not solicit, issue, or deliver a contract or policy of insurance to a Mississippi resident. *Id.* at 311.

Since the Mississippi Supreme Court has abandoned the *Mladinich* three-part test, *Hilbun* fails to provide the proper test to determine whether XL Insurance SE is doing business in Mississippi. *See Langston*, 301 So. 3d at 625; *Constenla*, 669 F.3d at 498. Therefore, the parties' arguments concerning whether XL Insurance SE "issued or delivered" a policy of insurance to Wartsila North America fails to address what this Court concludes the Mississippi Supreme Court

would look to in determining whether XL Insurance SE was doing business to make it amenable to personal jurisdiction.[4] *See Langston*, 301 So. 3d at 625.

### 2. XL Insurance SE and its Subsidiaries Underwrite Insurance in North America

Etienne also claims that XL Insurance SE "and subsidiary companies continuously and systematically underwrite insurance in North America[.]" [128], p. 3. Etienne provides a financial report demonstrating that 3.8% of XL Insurance SE's gross written premiums derived from North America. [128-7], p. 3. This may be true, but the report provides no direct correlation to Mississippi. The financial report simply demonstrates that XL Insurance SE's subsidiaries operate in North America: "The [Global Property and Casualty] segment is structured into two further segments International and North America." [128-7], p. 1. But no evidence shows that XL Insurance SE operates in Mississippi.

Etienne also directs the Court to the existence of XL Reinsurance America, Inc., XL Bermuda Ltd., and XL Insurance America, Inc., in an attempt to impute the actions of these companies to XL Insurance SE. [128], p. 3. Yet there was no effort in this case to allege or prove any factual basis for considering any other corporation to be the alter ego of XL Insurance SE. *See Gammil v. Lincoln Life and Annuity Distrib., Inc.*, 200 F. Supp. 2d 632, 634–35 (S.D. Miss. 2001) (citing *United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 691-92 (5th Cir. 1985), *cert denied*, 475 U.S. 1014, 106 S. Ct. 1194, 89 L. Ed. 2d 309 (1986) (setting forth ten factors to establish the alter ego standard)). "The corporate veil should not be 'pierced' unless the corporation exists to perpetrate a fraud or is a mere instrumentality, agent, adjunct, or sham designed to subvert the

---

[4] However, even under the factors set out in *Hilbun*, Etienne still fails to support that XL Insurance SE was doing business in Mississippi since the policy in question was issued from XL Insurance SE—in Sweden—to Wartsila Oyj Abp—in Finland. [118-3], pg. 2. *See Hilbun*, 210 So. 2d at 310.

ends of justice." *North Am. Plastics v. Inland Shoe Mfr. Co.*, 592 F. Supp. 875, 877, 877–78 (N.D. Miss. 1984) (applying Mississippi law) (citing *Johnson & Higgins of Mississippi, Inc. v. Commissioner of Insurance of Mississippi*, 321 So. 2d 281, 285 (Miss. 1975).

The Plaintiff in *Hogrobrooks* claimed that Progressive Direct did business in Mississippi because it is a subsidiary of Progressive Corporation of Ohio. *Hogrobrooks*, 858 So. 2d at 921. The Mississippi Court of Appeals held there was no personal jurisdiction because the nonresident insurance company made "no act or transaction in the state." *Id.* at 922. The court stated: "[t]he fact that a parent company has a subsidiary which is listed with the Secretary of State is not enough to show that a different subsidiary of the same company is qualified to do business in Mississippi." *Id.* at 921. "In order for there to be jurisdiction, related corporations must disregard their separate legal character in the manner that they operate." *Id. (*citing *Gammill*, 200 F. Supp. 2d at 634). Absent a showing that the nonresident insurance company committed an "act or transaction in the state" connected to this litigation, there was no personal jurisdiction. *Id.* at 922.

Etienne makes a similar claim that XL Insurance SE must be "doing business" in Mississippi because one of its subsidiaries is allegedly "doing business" in Mississippi. [128], p. 3; [147], p. 8. That simply is not enough. *See Hogrobrooks*, 858 So. 2d at 921 (citing *Gammill*, 200 F. Supp. 2d at 634–35). Etienne had the burden to prove XL Insurance SE is "engaged in 'various acts here for the purpose of realizing a pecuniary benefit or otherwise accomplishing an object'" such as selling to Mississippians online, soliciting residents, holding meetings in Mississippi, registering an agent for service of process, or obtaining a license to do business in Mississippi. *See Langston*, 301 So. 3d at 625; *see also Hogrobrooks*, 858 So. 2d at 919; *Wilson*, 62 So. 3d at 1001.

XL Insurance SE is registered under the laws of the Republic of Ireland and its principal place of business is in Dublin, Ireland.[5] [118-1], p. 2. XL Insurance SE is not licensed in Mississippi and has no registered agent designated to receive process on its behalf in the United States. *Id.* at 3. XL Insurance SE does not receive premium payments from Mississippi. *Id.* at 2. It has no agent or contracts with independent insurance agents in Mississippi. *Id.* XL Insurance SE has no bank accounts in Mississippi "or in the United States." *Id.* at 3. These uncontested facts, along with the lack of any other evidence from Etienne, reflect XL Insurance SE has not engaged in "various acts here for the purpose of realizing a pecuniary benefit or otherwise accomplishing an object" in Mississippi. *See Langston*, 301 So. 3d at 625. Accordingly, Etienne failed to demonstrate this Court can exercise personal jurisdiction over XL Insurance SE pursuant to the Mississippi long-arm statute.

**B. Constitutional Due Process**

Even assuming that XL Insurance SE falls within the Mississippi long-arm statute, exercising personal jurisdiction would be inconsistent with the Fourteenth Amendment's Due Process Clause.[6] Federal due process requires a plaintiff to prove two things: (1) "the non-resident defendant has 'purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the state,'" and (2) "the exercise of jurisdiction . . . does not offend traditional notions of fair play and substantial justice." *Halliburton Energy Servs. Inc. v.*

---

[5] Although at the time the insurance contract at issue was underwritten, XL Insurance SE was "headquartered" and had its principal place of business in London, United Kingdom. [118-1], p. 2.

[6] *See Lexington Ins. Co. v. Zurich Insurance (Taiwan) Ltd.*, 286 F. Supp. 3d 982 (W.D. Wis. 2017) (concluding foreign insurance corporation did not purposefully avail themselves of the privilege of doing business in Wisconsin to support personal jurisdiction), *aff'd, Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874 (7th Cir. 2019); *Liberty Surplus Ins. Corp. v. AXA Ins. Co.*, 2018 WL 3130400 (E.D. Penn. Jun. 26, 2018) (finding the Court lacked personal jurisdiction over foreign insurance corporation due to lack of minimum contacts), *aff'd* on other grounds, 788 F. App'x 850 (3d Cir. 2019).

*Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019) (quoting *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008)).

"Where a defendant has 'continuous and systematic general business contacts' with the forum state, the court may exercise 'general' jurisdiction over any action brought against that defendant." *Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colo.*, 615 F.3d 364, 368 (5th Cir. 2010) (quoting *Luv'n Care*, 438 F.3d at 469). "When the contacts are less extensive, the court may still exercise 'specific' jurisdiction where a 'nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Choice Healthcare*, 615 F.3d at 368 (citing *Walk Haydel & Assoc.*, 517 F.3d at 243.

This Court looks to whether XL Insurance SE "purposefully avail[ed] itself of the privilege of conducting activities in" Mississippi. *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317 (5th Cir. 2021); *Halliburton Energy Servs.*, 921 F.3d at 539. Thus, the Court must determine if there are "'minimum contacts' between the defendant and the forum State." *World-Wide Volkswagen Corp v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 580, 62 L. Ed. 2d 490 (1980) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). This analysis focuses on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014). This case turns on XL Insurance SE's relationship with Mississippi, and the burden is on Etienne to demonstrate that XL Insurance SE has minimum contacts with Mississippi. *See Fielding*, 415 F.3d at 424 (citations omitted). As stated above, Etienne has not demonstrated that XL Insurance SE has had any contact with Mississippi, let alone minimum contacts.

Etienne contends that "[e]very act by every employee [of Wartsila North America] in this territory is contact with the forum state." [128], p. 11. Etienne then concludes that "Wartsila North America continuously and systematically operates in North America, and they are defined as an insured under the policy, as are their employees." [128], p. 11. This may be true. But the proper question before the Court is whether XL Insurance SE "purposefully avail[ed] itself of the privilege of conducting activities in" Mississippi. *Johnson*, 21 F.4th at 317. Not the actions of Wartsila North America. *See Walden*, 571 U.S. at 284.

The Fifth Circuit held "a defendant does not have minimum contacts with a state when it does not have a physical presence in the state; it did not conduct business in the state; and the contract underlying the business transaction at issue in the lawsuit was not signed in the state and did not call for performance in the state." *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271(5th Cir. 2006)). Additionally, "the plaintiff's own contacts with the forum [cannot] be used to demonstrate contacts by the defendant." *Monkton Ins. Servs.*, 768 F.3d at 433 (citing *Walden*, 571 U.S. at 284).

Etienne contends that XL Insurance SE's "promise and duty to defend combined with a worldwide territorial coverage clause" in the policy "*and*" the alleged "strict duty to defend" in the XL Insurance America policy "is enough [to establish minimum contacts]." [147], p. 16.[7] It is undisputed that XL Insurance SE insures Wartsila North America. [142], p. 6. Likewise, it is undisputed that a worldwide coverage policy was issued to Wartsila Oyj Abp that covers Wartsila

---

[7] Wartsila North America is an insured under both the XL Insurance SE and XL Insurance America policies. XL Insurance America—a nonparty—issued a policy naming Wartsila North America as a named insured and contains a "strict duty" to defend clause. [146-7], p. 27. The XL Insurance SE policy might contain a duty to defend Wartsila North America. [118-3], p. 9. The parties disagree on that point. Assuming without deciding, and for purposes of this opinion only, the XL Insurance SE policy will be treated as if it does contain a duty to defend Wartsila North America.

North America in North America as an insured. [118-3], p. 6. Ultimately, Etienne argues that XL Insurance SE could "reasonably anticipate being haled into court in Mississippi" because "including coverage for liability in Mississippi through the act of insuring its insured . . . with the undertaking, duty and promise to defend Wartsila Finland and Wartsila North America in Mississippi, provides a benefit which was neither fortuitous, nor incidental." [147], p. 18.[8]

The Seventh Circuit faced a similar issue and determined that two nonresident insurers were not subject to personal jurisdiction in Wisconsin. *See Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874 (7th Cir. 2019). Then-Judge Barrett (now Justice Barrett) found the inclusion of a "worldwide coverage" clause was insufficient to satisfy the minimum contacts necessary for personal jurisdiction "simply because that clause made suit in that state foreseeable." *Lexington Ins.*, 938 F.3d at 882. Etienne argues that the issuance of the worldwide coverage clause and the duty to defend "provides a benefit" to XL Insurance SE. [147], p. 18. "The thrust of the argument is that [XL Insurance SE] derived financial benefit from affirmatively including [Mississippi (and the rest of the world) in its] territory of coverage—because the more extensive the geographic coverage, the higher the premium." *Lexington Ins.*, 938 F.3d at 880.

This may be true, but "gaining a financial benefit by including [Mississippi] in a territory of coverage is not the equivalent of 'doing business in' [Mississippi]." *Id.* at 881 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)). "A defendant does business in a forum state when it 'purposefully avail[s] itself of the privilege of *conducting activities within* the forum State, thus invoking the benefits and protections

---

[8] The XL Insurance SE policy was issued to Wartsila North America's parent company, Wartsila Oyj Abp—a nonparty—that Etienne consistently refers to as "Wartsila Finland." [118-3], p. 2. Wartsila North America is considered an insured under the XL Insurance SE policy because it is a subsidiary of Wartsila Oyj Abp. [118-3], p. 6; [162-3], p. 2.

of its laws.'" *Id.* (citing *Goodyear*, 564 U.S. at 924). XL Insurance SE has not made any purposeful contact with Mississippi before, during, or after the formation of the insurance contract. [118-1], p. 3. XL Insurance SE did not target the Mississippi market and is not licensed or registered to insure in Mississippi or the United States. [118-1], p. 2; *See Int'l Shoe*, 326 U.S. at 314 (salesmen solicited orders from buyers). The contract of insurance was "issued from [XL Insurance SE's] offices in Stockholm, Sweden" to Wartsila Oyj Abp in Helsinki, Finland. [118-1], p. 3; [118-3], p. 2. *Cf. Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 467, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

Further, "the Supreme Court has squarely rejected the proposition that such collateral financial benefits are purposeful contacts." *Lexington Ins.*, 938 F.3d at 881 (citing *World-Wide Volkswagen*, 444 U.S. at 298-99). "Just as the financial benefit gained by selling a product with the purpose and ability to travel to a vast number of distant forums is not itself business activity within those forums, so too here the financial benefit gained from broad geographic insurance coverage does not constitute 'doing business' within the entire covered territory." *Id.* XL Insurance SE's ties to Mississippi, "must be ties that 'the defendant [*itself*] purposefully forged." *Diece-Lisa Indus.*, 943 F.3d at 250 (quoting *Walden*, 571 U.S. at 284). Etienne has not demonstrated that XL Insurance SE had any contact with Mississippi.

Etienne additionally argues that it was foreseeable for XL Insurance SE to be sued in Mississippi because the "territorial coverage clause created the expectation" it would be "liable for damages in foreign forums." [147], p. 18. However, "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen*, 444 U.S. at 295; *see also Burger King*, 471 U.S. at 474-75; *Hanson v. Denckla*, 357 U.S. 235, 251, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). "[P]ermitting jurisdiction 'based on general

notions of fairness and foreseeability [ ] is inconsistent with the premises of lawful judicial power.'" *Lexington Ins.*, 938 F.3d at 882 (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 883, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011)). The Court looks to "the defendant's actions, not his expectations, that empower a [foreign state] to subject him to judgment." *Nicastro*, 564 U.S. at 883. As then-Judge Barrett stated, "we must follow the [Supreme] Court's admonition that the predictability of a plaintiff's action is not itself enough to justify a state's exercise of jurisdiction over a defendant." *Lexington Ins.*, 938 F.3d at 884 (citing *Walden*, 571 U.S. at 286).

Here, XL Insurance SE had a relationship with Wartsila Oyj Abp and Wartsila North America, not with Etienne or the state of Mississippi. XL Insurance SE did not make any purposeful contact with Mississippi by promising to defend Wartsila Oyj Abp—and its subsidiary Wartsila North America—for liability that it incurred anywhere in the world through the worldwide coverage clause. *See Lexington Ins.*, 938 F.3d at 884. "The inquiry into the 'minimum contacts' necessary to create specific jurisdiction focuses 'on the relationship among the defendant, the forum, and the litigation.'" *Walden*, 571 U.S. at 284 (citations omitted). XL Insurance SE has no relationship with Mississippi.

Nonetheless, Etienne cites the Middle District of Louisiana to support the contention that the worldwide coverage clause coupled with the duty to defend is sufficient to provide the minimum contacts necessary to establish personal jurisdiction. [147], pps. 15–20; *Gruver v. Louisiana Through Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. CV 18-772-SDD, 2021 WL 3204747, at *3 (M.D. La. Jul. 28, 2021). In *Gruver*, the court found jurisdiction was proper over a foreign insurer that issued a worldwide coverage policy with an explicit duty to

defend clause that obligated the foreign insurer to defend in Louisiana. 2021 WL 3204747, at *1, 6. But this case is distinguishable.

As *Gruver* stated, "[t]he Fifth Circuit has yet to decide on this specific issue[.]" 2021 WL 3204747 at *2. The court in *Gruver* looked "elsewhere for guidance" and found "[t]he majority of courts seem to indicate that promising to provide worldwide coverage makes it reasonably foreseeable that the insurer could be haled into any state's court where a covered injury occurred, so long as the insurer has obligated itself to defend the insured." 2021 WL 3204747, at *3 (citations omitted). The cases *Gruver* rely on mostly pre-date *Nicastro* and the Supreme Court's "admonition" that "foreseeability of suit in a forum is not enough to justify a state's exercise of jurisdiction over a defendant." *Lexington Ins.*, 938 F.3d at 884 (citing *Walden*, 571 U.S. at 284-86, *Nicastro*, 564 U.S. at 882-83).

In contrast to *Gruver*, the Court reads Supreme Court precedent to prohibit personal jurisdiction solely on the basis of a worldwide coverage clause and a duty to defend provision. *See Walden*, 571 U.S. at 284-86, *Nicastro*, 564 U.S. at 882-83; *World-Wide Volkswagen*, 444 U.S. at 295. Etienne also asserts that XL Insurance SE "could have excluded [Mississippi] from the territory-of-coverage clause." [147], p. 18. However, the Tenth Circuit has addressed this argument stating: "by chastising the defendant for having the ability to exclude certain forums from coverage and not exercising that ability, the court placed great weight on what the defendant did not do." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1094 (10th Cir. 1998). "Such reliance, however, is clearly at odds with the Supreme Court's mandate that minimum contacts be based on the defendant's affirmative actions which create a substantial connection with the forum state."

23

*OMI Holdings*, 149 F.3d at 1094 (citing *Burger King*, 471 U.S. at 475; *Asahi Metal Indus. Co. v. Sup. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 112, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)).

Even if XL Insurance SE is liable to Etienne, specific personal jurisdiction is improper. *See Walden*, 571 U.S. at 286 ("a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). "Due process requires that a defendant be haled into a court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. at 286 (citing *Burger King*, 471 U.S. at 475). Indeed, jurisdiction relies on the "relationship among the defendant, the forum, and the litigation," not the actions of the plaintiff or third parties. *Id.* at 291 (quoting *Calder v. Jones*, 465 U.S. 783, 788, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)).

Etienne failed to allege that XL Insurance SE engaged in any activities in Mississippi "that reveal an intent to invoke or benefit from the protection of its laws." *Nicastro*, 564 U.S. at 887. Consequently, XL Insurance SE's lack of contacts with Mississippi cannot establish the minimum contacts necessary to support the exercise of personal jurisdiction. *See Halliburton Energy Servs. Inc.*, 921 F.3d at 544. Therefore, this Court need not reach the question of whether jurisdiction is fair and reasonable. *See McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2019).

### III. CONCLUSION

Etienne has not demonstrated that this Court can exercise personal jurisdiction over XL Insurance SE under the Mississippi long-arm statute. Further, even if XL Insurance SE was subject to personal jurisdiction under the Mississippi long-arm statute, Etienne still fails to demonstrate

that XL Insurance SE has met the minimum contacts to purposefully avail itself to this Court. *See*

*Lexington Ins.*, 938 F.3d at 884.

IT IS THEREFORE ORDERED AND ADJUDGED, that the Defendant XL Insurance

SE's Motion to Dismiss [141] is GRANTED.

SO ORDERED AND ADJUDGED, this the 31st day of March 2023.

_____
TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE